IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 28, 2003

## THOMAS E. DUNN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 76120     Mary Beth Leibowitz, Judge**

_____

**No. E2003-00002-CCA-R3-PC**
**December 8, 2003**
_____

The petitioner appeals the summary dismissal of his petition for post-conviction relief as time-barred, arguing that he made out a prima facie case of mental incompetence and should therefore have been granted an evidentiary hearing to determine whether due process required that the statute of limitations be tolled.  Based on our review, we affirm the post-conviction court's dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Thomas E. Dunn, Brushy Mountain Regional Correctional Facility, Wartburg, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; and Randall E. Nichols, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On April 12, 1995, the petitioner, Thomas E. Dunn, pled guilty in the Knox County Criminal Court to the sale of less than one-half gram of cocaine, a Class C felony, and was sentenced as a Range II, multiple offender to eight years in the Department of Correction.  Pursuant to his plea agreement, the sentence was suspended and the petitioner was placed on a community alternative to prison program, which was set to expire on April 12, 2003.  Among the conditions of the petitioner's suspended sentence were that he complete treatment at the Veterans Administration Hospital in Nashville.  The petitioner was apparently subsequently removed from the community alternative to prison program and placed on unsupervised probation, followed by placement on enhanced supervised probation.  On July 12, 2001, the petitioner was revoked from probation and ordered to serve his original eight-year sentence in prison.  According to a letter from counsel

representing the petitioner when his probation was revoked in 2001, he had "absconded from the jurisdiction of the Court" for an undisclosed period.

On December 4, 2002, the petitioner filed a *pro se* petition for post-conviction relief by "next friend . . . inmate legal clerk Edward Kendrick," alleging, *inter alia*, that he was a Vietnam veteran suffering from service-related post-traumatic stress disorder, which consisted of his being "delusional, schizophrenic, bipolar, hallucinational [sic], confused, depressed, having mood swings, memory loss, no organization, paranoia, etc." The petitioner alleged this condition resulted in mental incompetence to handle his personal, legal, and financial affairs and prevented him from filing the post-conviction petition in a timely fashion. In support of his claim, he attached five exhibits: an affidavit from inmate legal clerk Kendrick; an affidavit from his daughter; an affidavit from his mother; a July 16, 2001, letter from his public defender; and documents from the Veterans Administration. The petitioner asserted that the attached exhibits were sufficient evidence to warrant the appointment of counsel, an evidentiary hearing, and the subsequent tolling of the statute of limitations, pursuant to State v. Nix, 40 S.W.3d 459 (Tenn. 2001).

On December 12, 2002, the post-conviction court entered an order summarily dismissing the petition on the grounds that it was barred by the one-year statute of limitations. The petitioner then filed a timely appeal to this court, challenging the summary dismissal of his petition for post-conviction relief.

## ANALYSIS

The petitioner contends he submitted sufficient evidence to make out a prima facie case of mental incompetence and should, therefore, have been granted an evidentiary hearing on the issue of whether his mental incompetence tolled the applicable one-year statute of limitations under the 1995 Post Conviction Procedure Act. See Tenn. Code Ann. § 40-30-202(a) (2003). The State responds by arguing that the proof submitted by the petitioner was insufficient to make out a prima facie case that the petitioner was unable either to manage his personal affairs or to understand his legal rights and liabilities during the entire period between the date of his conviction and the date the petition for post-conviction relief was filed. We agree with the State.

Under the Post-Conviction Procedure Act of 1995, a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-202(a) (2003). The 1995 Act contains a specific anti-tolling provision. Id. However, in Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000), our supreme court recognized that due process requires that the post-conviction statute of limitations be tolled during periods of a petitioner's mental incompetency. In Nix, 40 S.W.3d at 463, our supreme court, addressing the issue of what specific standard of mental incompetence must be satisfied to require tolling, held that "due process requires tolling of the post-conviction statute of limitations only if a petitioner shows that he is unable either to manage his personal affairs or to understand his legal rights and liabilities." Id. The Nix court

stressed that the burden is on the petitioner to include specific factual allegations in his petition to support his claim of mental incompetence:

> We emphasize that to make a prima facie showing of incompetence requiring tolling of the limitations period, a post-conviction petition must include specific factual allegations that demonstrate the petitioner's inability to manage his personal affairs or understand his legal rights and liabilities. Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal under Tenn. Code Ann. § 40-30-206 (b) & (f). The required prima facie showing may be satisfied by attaching to the petition affidavits, depositions, medical reports, or other credible evidence that contain specific factual allegations showing the petitioner's incompetence. While affidavits and depositions of mental health professionals may be utilized, they are not essential, and a petitioner may rely upon affidavits and depositions from family members, prison officials, attorneys, or any other person who has knowledge of facts that demonstrate either the petitioner's inability to manage his personal affairs or the petitioner's inability to understand his legal rights and liabilities.

Id. at 464 (citations omitted).

In addition to alleging specific facts to show mental incompetence, the post-conviction petitioner must, in order to avoid dismissal of his petition on the basis of the statute of limitations, demonstrate that he did not experience a total of one year of mental competency during the time between the highest action taken by an appellate court on his case or the date his conviction became final and the filing of his petition. See Alvin L. Smith v. State, No. 01C01-9808-CC-00343, 1999 WL 810229, at *2 (Tenn. Crim. App. Oct. 12, 1999) (observing that petition for post-conviction relief was not timely filed if petitioner was competent for a total of either three years or one year, depending on whether the three-year statute of limitations under the 1989 Act, or the one-year statue of limitations under the 1995 Act, applied).

In support of his claim of mental incompetence, the petitioner attached five exhibits to his petition. Taken together, these exhibits, however, fail to allege facts sufficient to make out a prima facie case of the petitioner's mental incompetence during the entire relevant period, such as to bar application of the statute of limitations to dismiss his petition. Exhibit A is an affidavit of "inmate legal clerk" Edward Kendrick, stating that the petitioner "seemed incapable of assisting [him] in adequately preparing his petition" and, in conversations with Kendrick, "would always revert back to discussing the [V]ietnam [W]ar and other issues not directly bearing on the subject in question." The allegations contained in this affidavit, taken as true, establish nothing more than the petitioner's inability to stay on the topic in conversations with Kendrick or to assist him in the preparation of the

post-conviction petition, which was filed in December 2002, over seven years after the petitioner's conviction became final.

Exhibit B is an affidavit by the petitioner's daughter stating that she was his personal representative from 1990-1996; that she was "appointed/chosen as the personal representative . . . concerning all of his legal, personal and financial affairs because he was mentally incompetent and unable as he still is now to manage his personal affairs nor understand his legal rights and liabilities"; and that she has first-hand knowledge of the petitioner's mental incompetence and would be willing to testify to such in any proceeding on his behalf. Exhibit C consists of a similar affidavit by the petitioner's mother, dated October 7, 2002, stating that she is the personal representative of the petitioner; that she was "appointed/chosen as [his] personal representative over all of his legal, personal and financial affairs because he is mentally incompetent and unable to manage his personal affairs nor understand his legal rights and liabilities"; and that she has first-hand knowledge of his mental incompetence and would be willing to testify to such mental incompetence in any proceeding on his behalf. The affidavit does not state when the mother was "appointed/chosen" as the petitioner's personal representative, or under what circumstances. Thus, both of these affidavits by the petitioner's family members contain merely conclusory allegations about the petitioner's mental incompetence and inability to handle his personal, financial, and legal affairs. Furthermore, neither affidavit contains specific allegations that the petitioner was mentally incompetent for the entire period between the date his conviction became final and the filing of his post-conviction petition.

Exhibit D is a letter from the petitioner's public defender, dated July 16, 2001, in which she explained the petitioner's July 12, 2001, court proceeding in which he agreed to the revocation of his probation. The petitioner's attorney states in her letter that the judge "has agreed to write a letter recommending [the petitioner] to the Special Needs Facility in Nashville due to [his] mental health and physical ailments." The attorney's reference to the petitioner's "mental health and physical ailments" falls far short of establishing that the petitioner was mentally incompetent at the date of the probation revocation hearing. See Nix, 40 S.W.3d at 465 ("[E]ven when proven, mental illness does not equate with incompetency." ); see also Alvin L. Smith, 1999 WL 810229, at *3 (noting that petitioner's admission to DeBerry Special Needs Facility in Nashville did not necessarily mean petitioner was incompetent). Furthermore, there is nothing in the letter that addresses the petitioner's mental state in the months and years before the July 2001 revocation hearing.

The last exhibit the petitioner attached to his petition, Exhibit E, consists of three pages of documents apparently associated with his treatment in 1996 at the Veterans Administration Hospital in Nashville. The first is a form document dated November 14, 1996, and entitled "Status Change," with a box marked to indicate it is a "supplemental" report. Other information contained in the document is that the petitioner's date of admission was June 13, 1996, that his date of release was October 30, 1996, and that he was released to "Outpatient Treatment - NSC." Under the "Remarks" section of the form is the following typewritten report: "Patient is in receipt of pension. Social Security rated patient incompetent. See discharge summary." Although the next page of Exhibit E is marked as "Page 2," it does not appear to be the second page of the "Status Change" document,

as it is dated December 3, 1996, and entitled "Rating Decision." This document contains the following pertinent information regarding the petitioner:

> Service connection for post-traumatic stress disorder has been established as directly related to military service. This condition is evaluated as 100 percent disabling from May 11, 1994, the date the veteran's original claim was received as he has continuously pursued his claim since that time. We made this determination as the hospital report dated May 1996, indicates the veteran was admitted to the PTSD program to which he responded satisfactorily. However, we assigned a Global Assessment of Functioning score of 30, and the examiner indicated he remains incompetent. (Note: the issue of competency was addressed by our rating decision dated 04-24-96.) An evaluation of 100 percent is assigned if the attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic symptoms such as fantasy, confusion, panic, and explosions of aggressive energy with disturbed thought or behavioral processes border on gross repudiation of reality resulting in profound retreat from mature behavior. An evaluation of 100 percent is also assigned for inability to secure or follow a substantially gainful occupation.
>
> Since this is the veteran's initial evaluation and there is some likelihood of improvement, we are scheduling a future review examination for October 1997, to assess his disability at that time.

The final document included in Exhibit E, hand dated September 27, 2002, appears to be a page copied from a textbook and is entitled "Global Assessment of Functioning (GAF) Scale." According to this document, a scale of 30 is assigned when

> **Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, home, or friends).

(emphasis in original).

Even if the petitioner was evaluated by the Veterans Administration as 100% disabled and given a Global Assessment of Functioning score of 30, due, respectively, to his "[t]otally incapacitating psychoneurotic symptoms" and behavior that was "considerably influenced by delusions or hallucinations," as opposed to his "inability to secure or follow a substantially gainful

occupation" and "inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)," nothing in these reports indicates that the petitioner remained incompetent for the entire period leading up to the date he filed his petition for post-conviction relief.  In this regard, we note that the petitioner did not include as an exhibit any results of the Veterans Administration review examination that was scheduled for October 1997.

In sum, we conclude that the petitioner failed to make the required prima facie showing of incompetence to prevent the application of the post-conviction statute of limitations to bar the consideration of his petition.  Accordingly, we affirm the post-conviction court's dismissal of the petition as time-barred.

_____
ALAN E. GLENN, JUDGE